## Commonwealth ex rel., v. Frame

*Burton Neil, Assistant Public Defender,* for relator.

*Frank L. Williams, Assistant District Attorney,* contra.

SUGERMAN, *J.,* November 22, 1974—Relator, Leon Powell, Jr., confined in the Chester County Farms Prison, has petitioned for a writ of habeas corpus, asserting two grounds in support thereof: (1) the district justice who committed relator following a preliminary hearing should have disqualified himself prior to such hearing, and (2) as a result of the district justice finding a prima facie case against relator, a detainer was lodged against relator by the Pennsylvania Board of Probation and Parole (hereinafter, "board"), and the board thereafter ordered relator detained without affording him a hearing.

## PRELIMINARY HEARING

On an unspecified date prior to the commencement of the instant proceedings and unrelated thereto, relator was arrested and ultimately

pleaded guilty to a charge of burglarizing the office of District Justice John F. Catanese of this county. At the preliminary hearing on the charge, Justice Catanese appeared before the district justice presiding at the hearing and testified as a witness against relator.

Thereafter, relator was again arrested on July 9, 1974, upon charges of robbery, theft and receiving stolen property, and on the same day taken before the said Justice Catanese and given a preliminary hearing, Justice Catanese presiding. Following the hearing, Justice Catanese, finding a prima facie case made out, ordered relator committed to Chester County Farms Prison, where he yet remains awaiting action by a grand jury in default of $25,000 bail. Thereafter, on September 10, 1974, relator was indicted by a regular grand jury, arraigned on October 3, 1974, entered a plea of not guilty to the indictment.

The gravamen of relator's first ground is that Justice Catanese, the "victim" of relator's prior conduct and a witness against relator in a criminal proceeding, should have disqualified himself and refused to preside at the preliminary hearing on the instant charges. Relator further argues that the failure of Justice Catanese to disqualify himself so tainted the preliminary hearing that realtor was effectively denied a preliminary hearing. He now seeks another hearing before an impartial magistrate.

The disqualification of a district justice in Pennsylvania is governed by Rule 8 of the Rules Governing Standards of Conduct of Justices of the Peace adopted by the Supreme Court of Pennsylvania on October 15, 1969, effective January 1, 1970.

We need not here decide, however, whether Justice Catanese should have disqualified himself as we note that, following the preliminary hearing, relator was indicted by a grand jury and thereafter pleaded to the indictment. Consequently, his confinement is now the result of and based on testimony presented to the grand jury, rather than that presented to the committing magistrate.

Moreover, it is fundamental that, having been indicted, relator cannot now challenge the regularity of the preliminary hearing. The Superior Court of Pennsylvania, in Commonwealth v. Weinstein, 177 Pa. Superior Ct. 1, 2, 109 A. 2d 235, 236 (1954), stated the rule succinctly:

"It has long been held that a defendent in a criminal case may not raise a question touching upon the legality of his arrest *or the regularity of the proceedings before the magistrate after an indictment is found* . . . [citations omitted]" (emphasis added).

See also, Commonwealth v. Krall, 452 Pa. 215, 304 A. 2d 488 (1973), and cases cited therein; Commonwealth v. Manni, 223 Pa. Superior Ct. 403, 302 A. 2d 374 (1973); and Commonwealth, ex rel. Hamm, v. Frame, 21 Chester 256 (1973).

## PAROLE HEARING

Relator, who was on parole at the time of his arrest and commitment, next alleges that, as a result of his having been bound over by Justice Catanese to await action by a grand jury, the Pennsylvania Board of Pardon and Parole (hereinafter, "board") lodged a detainer against him and notified him that a hearing would be held by the board to determine whether there was prob-

able cause to believe that relator had violated parole. Relator further avers that no date for such hearing was indicated, and that he was denied an opportunity to appear before the board and present evidence. Nevertheless, relator avers that the board met in executive session on July 26, 1974, and ordered relator detained until disposition of the charges upon which he now awaits trial.

We note initially that relator is not now detained by reason of his present arrest and commitment in default of bail. Rather, it has been alleged that relator violated two conditions of his parole: the first thereof that he changed his residence without written permission, and the second thereof that he failed to obtain and maintain employment. Accordingly, the action of Justice Catanese in binding relator over for trial on pending charges is irrelevant to a discussion of the board's detainer.

It is undisputed that on July 9, 1974, three days after his arrest, relator was interviewed at the prison by one R. C. Schaeffer, parole agent of the board in the absence of the relator's supervising parole agent, Miss Stoltzfus. On that date, relator was advised that he was suspected of violating conditions 2 and 4 of the conditions of his parole relating to place of residence and the maintenance of employment, as noted. During the interview, relator admitted the alleged violations, both unrelated to the charges upon which relator now awaits trial. Agent Schaeffer reported the results of the interview to Madison P. Mullen, parole supervisor employed by the board, who, in turn, prepared a lengthy report on the subject and transmitted the same to the board.

Thereafter, on July 15, 1974, relator was afforded

a "Preliminary Hearing and Detainer Hearing" at the prison by Agent Frey of the board. At the hearing, relator waived counsel and a hearing before the board. At the conclusion of the hearing, Agent Frey reported to John F. Dmitri, supervisor with the board, who in turn prepared a report for the board, and recommended that relator be detained pending the "outcome" of the instant charges.

Thereafter, the board, at an executive session held on July 26, 1974, ordered relator detained pending disposition of the instant charges. Relator now avers that on this record he has been denied due process. We do not agree.

Firstly, relator's parole has not been revoked. He has merely been detained pending disposition of criminal charges now pending against him. Following such disposition, relator will presumably be afforded a revocation hearing. In Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), the principal authority on the subject of the so-called "detention hearing," Chief Justice Burger expressing the views of six members of the court held:

". . . due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest. . . ." 408 U.S. at 485, 33 L. Ed. 2d at 496.

The detention hearing at bar occured within a week of relator's arrest, at Chester County Farms Prison situate a few miles from Coatesville, Pa., the place of the alleged parole violations.

"In our view, due process requires that after the arrest, the determination that reasonable ground

exists for revocation of parole should be made by someone not directly involved in the case.": 408 U.S. at 485, 33 L. Ed. 2d at 497.

and such person conducting the hearing need be only

". . . some person *other* than one initially dealing with the case. It will be sufficient, therefore, in the parole revocation context, if an evaluation of whether reasonable cause exists to believe that conditions of parole have been violated is made by someone such as a parole officer other than the one who has made the report of parole violations or has recommended revocation.": 408 U.S. at 486, 33 L. Ed. 2d at 497.

At bar, Agent Schaeffer made the initial contact with relator and prepared the first report concerning the alleged parole violations. In his report, Agent Schaeffer recommended detention. Agent Frey conducted the hearing, and Agent Dmitri recommended detention to the board. The board finally determined that relator be detained. Clearly, someone other than the officer who initially dealt with the case (Schaeffer) or who recommended detention (Dmitri) conducted the hearing (Frey). Further, detention was ordered by the board itself, presumably after review and consideration of the reports of Agents Schaeffer, Mullen and Dmitri. We believe such procedures fully comport with the due process required by Morrissey v. Brewer, supra.

With respect to the preliminary hearing before the hearing officer,

". . . the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The

notice should state what parole violations have been alleged.": 408 U.S. at 486, 487, 33 L. Ed. 2d at 497.

Instantly, the record reveals that on July 10, 1974, five days before the hearing, relator received notice that a hearing would be held within ten days, and was further advised in writing of the two conditions of parole he allegedly violated. (There is no indication here that the relator was advised of the specific date for the hearing. The better practice should require such specific notice.)

"At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer.": 408 U.S. at 487, 33 L. Ed 2d at 497.

Instantly, the notice of hearing served on the relator more than satisfied such requirements.

"The hearing officer shall have the duty of making a summary, or digest, of what occures (sic) at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position.": 408 U.S. at 487, 33 L. Ed. 2d at 498.

The reports of the hearing officer and his two immediate supervisors, Agents Dmitri and Mullen, all forwarded to the board, certainly comply with the latter requirements.

And lastly,

"Based on the information before him, the officer should determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation. Such a determination

would be sufficient to warrant the parolee's continued detention to the state correctional institution pending the final decision.": 408 U.S. at 487, 33 L. Ed. 2d at 498.

Such latter finding was made by Agent Schaeffer, and Supervisors Dmitri and Mullen. Apparently based on all the material before it, the board itself, rather than the hearing officer ordered detention, a practice which cloaks a parolee with more protection than that mandated by Morrissey v. Brewer, supra.

Relator has been afforded due process in connection with his present detention and is not unlawfully incarcerated.

### ORDER

And now, November 22, 1974, the petition for writ of habeas corpus is denied and dismissed.